

FILED
AUG 2 3 2010
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| VOLTAGE PICTURES, LLC, | Civ. 10-mc-75 |
| Plaintiff, | |
| vs. | **BRIEF IN SUPPORT OF MOTION TO QUASH AND OBJECTIONS TO SUBPOENA** |
| DOES 1-5,000, | |
| Defendants. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

COMES NOW Midcontinent Communications, Inc., a non-party to the above-entitled matter, which has received a copy of a document purporting to be a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, and respectfully submits this Brief in Support of its Motion to Quash and Objections to that Subpoena.

## Factual Background

Midcontinent Communications, Inc., is a telecommunications company located in Sioux Falls, South Dakota, and its records are also maintained in Sioux Falls. *See* Johnson Aff. at ¶ 2. It provides internet access to customers, *i.e.*, it is an internet service provider (ISP). *Id.* On August 9, 2010, Midcontinent received a facsimile letter and subpoena from an action titled, *Voltage Pictures, LLC v. Does 1-5,000*. *Id.* at ¶ 4 & Exhibit A. This subpoena was not accompanied by any witness fee or assurance of payment for the costs of compliance, *e.g.*, retrieving information, copying, etc. *Id.* at ¶ 5. This subpoena was not served under the Federal Rules of Civil Procedure, but was simply faxed to Midcontinent. *Id.* at ¶ 4.

The subpoena commands Midcontinent to produce 143 of their customers' names, current (and permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses. *Id.* at ¶ 4 & Exhibit A. The subpoena is captioned under the authority of the United States District Court for the District of Columbia. *Id.* at Exhibit A. Midcontinent has not been served with any subpoena from this Court or any other South Dakota court. *Id.* ¶ 4. Under Midcontinent's own policy, it cannot provide its customer information to third parties without a valid court order or subpoena. *Id.* at ¶ 7 & Exhibit B.

This subpoena arises from a *John Doe* action. The docket proceedings in this underlying action show Voltage Pictures alleges that unknown individuals are violating its copyrights in a certain movie. To protect its copyright and recover damages, Voltage Pictures has initiated a *John Doe* action in order to gain the knowledge of the identities of individuals who it believes has violated its copyright. Because the action is in the nature of a *John Doe* action, Voltage Pictures sought and received an order from the District of Columbia Court, allowing it to undertake discovery prior to a Rule 26(f) parties' planning meeting in order to discover the identity of unknown defendants.

Midcontinent has moved to quash the subpoena not only because it was not properly served, and the subpoena is from a court which does not have jurisdiction over Midcontinent, the subpoena also seeks to place an undue burden and expense on Midcontinent, without any guarantee or even offer to reimburse Midcontinent for its time and expense in providing such information.

### Legal Authorities and Argument

Midcontinent is not a party to the District of Columbia action, nor has the District of Columbia court jurisdiction over Midcontinent. *See e.g., United States v. B.H.*, 456 F.3d 813,

2

817 (8th Cir. 2006); *In re Baycol Prods.*, 2004 WL 1058105 (D. Minn. May 3, 2004) (citing

*Hartland v. Alaska Airlines,* 544 F.2d 992, 1002 (9th Cir.1976) (stating any attempt to reach

persons who are not proper parties without service of process "is beyond the court's power"); *In*

*re Linerboard Antitrust Litig.,* 292 F.Supp.2d 644, 664 (E.D.Pa.2003) (finding the court lacked

jurisdiction over cases not formally transferred into the MDL, and refusing to order sequestration

of funds from settlements and other recoveries in untransferred cases).

Rule 45(a)(2), under which subpoenas are issued, provides that a subpoena for production

of documents may issue from the court for the district where the production is to be made. Since

the information requested is located in Midcontinent's office in Sioux Falls, South Dakota, a

subpoena to retrieve that information would have to come from this Court, not a District of

Columbia court. *See* FED.R.CIV.P. 45(a). *See also In re Subpoena to University of North*

*Carolina at Chapel Hill*, 367 F. Supp.2d 945 (M.D.N.C. 2005) (discussing subpoena jurisdiction

asserted by copyright owner).

A threshold inquiry for considering Rule 45 subpoenas is whether service was properly

effected. In this case, the subpoena was faxed to Midcontinent. No personal service was

effected, nor has Midcontinent admitted service. *See* FED.R.CIV.P. 45(b). Rule 45(b)(1)

normally requires a subpoena to be delivered to the named person, with a tender of fees for one

day's attendance and mileage. No tender of fees of any sort were offered to Midcontinent.

Failure to tender the witness fee and mileage allowance renders a subpoena invalid. *CF & I Steel*

*Corporation v. Mitsui & Co. (U.S.A.), Inc.,* 713 F.2d 494 (9th Cir.1983); *see also* 9A CHARLES

ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2454, pp. 401-03

(2008).

Further, even if personal attendance is not required, Rule 45(b)(1) indicates that if a subpoena "commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party." There is no indication of the service and filing of such a notice in this instance. "A party may only be compelled to comply with a properly issued and served subpoena." *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 686 (D. Kan. 1995).

Not only is the subpoena lacking in service and jurisdiction, its attempted command places an undue burden upon Midcontinent, when the party attempting to issue the subpoena has offered no guarantee or even proposal of compensation for Midcontinent's burden of compliance. FED.R.CIV.P. 45(c)(1) requires parties serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." FED.R.CIV.P. 45(c)(2)(B) recognizes that non-parties must be protected from "significant expense resulting from compliance" with a subpoena.

Courts which have addressed the question of discovery from non-parties "have considered a number of factors including how narrowly tailored the request is, cost, availability of the information, importance of the issues at stake, and the benefits to the parties." *Guy Chem. Co., Inc. v. Romaco AG*, 243 F.R.D. 310, 312 (N.D. Ind. 2007) (citations omitted).

> Non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *United States v. Amerigroup Ill., Inc.*, 2005 WL 3111972 at *4 (N.D.Ill.2005) (citations omitted). It is clear that discovery in the hands of a non-party is subject to discovery under the Federal Rules. *See* FED.R.CIV.P. 26(b)(1); FED.R.CIV.P. 45; *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 25, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). But that does not mean non-parties must yield discovery that causes undue burdens, as evidenced by the protections in the Federal Rules. *See* FED.R.CIV.P. 26(b), (c); FED.R.CIV.P. 45(d). **Non-parties understandably object to paying the litigation costs of other parties**. *See Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998); *Dart Indus. Co. v. Westwood Chem. Co.,* 649 F.2d 646, 649 (9th Cir.1980); *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49

4

(S.D.N.Y.1996). **Simply put, it is not [the non-party recipient of the subpoena's] lawsuit and they should not have to pay for the costs associated with someone else's dispute. Not only is it fundamentally unfair for non-parties to bear the significant litigation costs of others, but also if this Court were to allow litigating parties . . . to impose such a burden on non-parties, then the likelihood of cooperation by non-parties in the future would be placed in jeopardy.**

*Id.* at 313 (emphasis added).

Thus, in *Guy Chem. Co.*, the party seeking discovery from the non-party was required to pay for the expenses involved with discovery it sought. *Id.*; *see also In re New England Carpenter Health Benefits Fund*, 2006 WL 3050806, at * 2 (C.D. Ill. 2006) ("requiring a non-party to incur what appear to be rather significant costs of complying with the subpoena as it relates to these contracts constitutes an undue burden. Unless [the party seeking discovery] is willing to pay the costs associated with this request, the subpoena is quashed as to these remaining contracts."); *Spears v. City of Indianapolis,* 74 F.3d 153 (7th Cir.1996) ( Rules 45 and 26 give "considerable discretion" in determining whether expense-shifting in discovery production is appropriate in a given case); *Compaq Computer Corp. v. Packard Bell Electronics, Inc.,* 163 F.R.D 329 (D.C. Cal. 1995) (awarding hourly rate for in-house legal staff and for employees sitting for deposition).

Midcontinent has shown it will have a cost of production – the production is expected to take approximately three and one-half hours and would, accordingly, cost Midcontinent approximately Three Hundred and Fifty Dollars ($350.00). *See* Johnson Aff. at ¶ 6. Midcontinent is not a party to the District of Columbia action, and it should not have to be the entity bearing the cost of production. Under Rule 45, if the parties to the District of Columbia action desire to obtain such information, they must bear the costs of that production.

If Midcontinent were required to produce this information, it may have to, or in an abundance of caution would, notify its customers that their personal information was being disclosed to a third party. *See* 47 U.S.C. § 551(c) (The Cable Communications Policy Act). *See also Arista Records, LLC v. Does 1-12*, 2008 WL 4133874 (E.D. Cal., Sept. 4, 2008); *UMG Recordings, Inc. v. Does 1-4*, 2006 WL 1343597 (N.D. Cal., April 19, 2006). This predisclosure notification would increase Midcontinent's costs of production even beyond the amount stated above, and the party seeking the disclosure should bear that cost.

It should be noted that the subpoena at issue in this matter purports to require Midcontinent to reveal highly personal information of purported customers, including customer names and addresses, telephone numbers, e-mail addresses, and Media Access Control addresses, all without notice to the potential customers. Voltage Pictures' purpose in obtaining this information is to sue the individuals for copyright violation. Although not squarely on point, this action runs counter to certain statements expressed in *In re Charter Communications, Inc.*, 393 F.3d 771 (8th Cir. 2005). In *Charter*, copyright owners wanted to obtain and serve subpoenas on internet service providers (ISPs), like Midcontinent, to obtain personal information of the ISPs' subscribers who were alleged to be violating copyrights. *Id.* at 772-73. After the district court issued such a subpoena, the Eighth Circuit reversed. *Id.* The Court issued its ruling on the basis of the Digital Millennium Copyright Act (DMCA), 17 U.S.D. § 512(h), and its subpoena mechanism. *Id.* at 775-78.

The party which had been subject to the subpoena had not only questioned its validity under the DMCA, but had also asserted other issues. *Id.* at 775. Because the Court was able to reach its decision under the DMCA, it did not rule upon Charter's other issues, but did state:

> this court has some concern with the subpoena mechanism of § 512 (h). We comment without deciding that this provision *may* unconstitutionally invade the

power of the judiciary by creating a statutory framework pursuant to which Congress, via statute, compels a clerk of court to issue a subpoena, thereby invoking the court's power. Further, we believe Chart has at least a colorable argument that a judicial subpoena is a court order that must be supported by a case or controversy at the time of its issuance.

*Id.* 777-78 (emphasis in original). Given this language, there is a concern whether a case or controversy exists.

### Conclusion

Midcontinent respectfully asks the Court to sustain its objections and grant its motion to quash the subpoena faxed to it on August 9, 1020. At the very least, before Midcontinent is forced to reveal the names, addresses, and electronic information of its customers, the Court should require Voltage Pictures to properly serve Midcontinent with a valid subpoena from a court with subpoena power over Midcontinent. Further, avoid any undue burden upon Midcontinent, the Court should not require compliance with any such subpoena without also requiring Voltage Pictures to pay Midcontinent for its time and expenses in responding to the subpoena. Finally, Midcontinent would respectfully request the Court to consider the concerns raised in *Charter Communications*, as addressed above.

Dated at Sioux Falls, South Dakota, this 23rd day of August, 2010.

DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P.

Sandra Hoglund Hanson
206 West 14th Street
PO Box 1030
Sioux Falls, SD 57101-1030
Telephone: (605) 336-2880
Facsimile: (605) 335-3639
E-mail: shanson@dehs.com
*Attorneys for Midcontinent Communications, Inc.*

7

## CERTIFICATE OF SERVICE

Sandra Hoglund Hanson, one of the attorneys for Midcontinent Communications, Inc.,

hereby certifies that a true and correct copy of the foregoing "Brief in Support of Motion to

Quash and Objections to Subpoena" was served by mail upon:

> Nicholas A. Kurtz
> Dunlap Grubb Weaver
> 199 Liberty St., SW
> Leesburg, Virginia 20175
> Telephone:  571-252-3311
> E-mail:nkurtz@dglegal.com
> *Attorneys for Plaintiff*

on this 23rd day of August, 2010.